IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAKSIM ISAYEV,

                Petitioner,

vs.

JOE A. LIZARRAGA, Warden, Mule Creek State Prison,[1]

                Respondent.

No. 2:12-cv-02551-JKS

MEMORANDUM DECISION

Maksim Isayev, a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Isayev is in the custody of the California Department of Corrections and incarcerated at Mule Creek State Prison. Respondent has answered, and Isayev has replied. This Court denied the petitions for habeas relief filed by Isayev's co-defendants, Mariya Stepanov and Gennadiy Sevchuk, on December 9, 2015. *See Stepanov v. Miller*, Case No. 2:12-cv-02644-JKS; *Sevchuk v. Cate*, Case No. 2:12-cv-02857-JKS. Sevchuk did not appeal the Court's denial of his petition. Stepanov appealed, and the Ninth Circuit Court of Appeals denied Stepanov's request for a certificate of appealability, Case No. 15-17561. Isayev's Petition involves facts relevant to both Sevchuk's and Stepanov's cases.

I. BACKGROUND/PRIOR PROCEEDINGS

On April 3, 2006, Isayev, along with co-defendants Stepanov and Sevchuk, was charged with the first-degree murder of Dmitriy Paskar. The information alleged as a special circumstance that the defendants intentionally killed Paskar while lying in wait. It further

---

[1]       Joe A. Lizarraga, Warden, Mule Creek State Prison, is substituted for Daniel Paramo, Warden, Richard J. Donovan Correctional Facility. Fed. R. Civ. P. 25(c).

alleged that Isayev personally used and discharged a firearm and that Sevchuk and Stepanov were vicariously armed with the shotgun in the commission of the murder.  On direct appeal of Isayev's conviction, the Court of Appeal recounted the following facts underlying the murder charge:

> The events surrounding this murder began when the victim slept with defendant Stepanov and then bragged about it.  Stepanov was very upset and told defendant Isayev, her former boyfriend, what had happened. Isayev told his friend, defendant Sevchuk.
>
> Defendant Sevchuk bought ammunition for Isayev's shotgun and loaded the gun. Isayev, Sevchuk and others drove to the victim's home, intending to shoot the victim when he came out of his house.  However, when the victim made his appearance, he was accompanied by his girlfriend and the assault did not occur because defendants did not want any witnesses.
>
> Isayev called Stepanov to report this kink in the plans, and told her to call the victim to make arrangements to meet him late that night at a park.  Stepanov did so. When Isayev and Sevchuk drove up, Isayev saw the victim and Stepanov standing close together; the victim reached for Stepanov and groped her.  Isayev got out of the car, retrieved his loaded shotgun from the trunk, and approached the victim, asking Stepanov if this was "the guy."  When Stepanov nodded, Isayev shot the victim twice and killed him.

*People v. Isayev*, No. C055417, 2011 WL 2848584, *1 (Cal. Ct. App. July 19, 2011).

The defendants pled not guilty to the charge and denied the allegations.  They were jointly tried before separate juries.  At trial, Isayev admitted shooting the victim, but he asserted that it was in the heat of passion or due to provocation, and he was therefore guilty only of voluntary manslaughter.  Stepanov claimed that she only wanted the victim to apologize and be punished, and she never intended Isayev to kill Paskar.  Sevchuk asserted that, although he was at the scene of the murder, he was drunk and uninvolved in any plan to kill the victim.  The primary issues at trial were thus: 1) whether the murder was premeditated; and (2) whether Sevchuk and Stepanov were liable as aiders and abettors for a murder that was the natural and probable consequence of an intended assault.

2

Evidence was presented at trial regarding Isayev's reputation as a violent and jealous person. It was also established that Sevchuk and Stepanov knew that Isayev had a gun and had previously been involved in shooting incidents arising from jealousy. Witnesses described hearing Isayev brag about the murder and make statements such as "[W]henever I do anything, I do it 100 percent. I know what I'm doing." He told one witness that he had aimed for the victim's head and killed him to stop him from raping girls.

Mikalai Yarmaliuk, the person who first drove the car to the victim's house, also testified for the prosecution. Yarmaliuk described Sevchuk loading the shotgun, the plan to shoot the victim, the phone conversations between Isayev and Stepanov, and Isayev's past violent conduct. Yarmaliuk had suffered head injuries in an earlier accident, and the defendants challenged his memory, emphasizing the inconsistencies in his testimony and his general credibility.

On March 12, 2007, Isayev's jury found him guilty of first-degree murder and found true the allegation that he personally used and discharged a firearm as well as the special circumstance allegation that the defendants intentionally killed Paskar while lying in wait.[2] The trial court subsequently sentenced him to a sentence of life imprisonment without the possibility of parole ("LWOP"), enhanced 25 years to life for the personal use and discharge of the shotgun.[3]

Through counsel, Isayev appealed his conviction, arguing that: 1) the trial court erroneously discharged a holdout juror; 2) the trial court improperly refused the defense's

---

[2] Stepanov's and Sevchuk's juries each found them guilty of second-degree murder and found true the allegation that they were vicariously armed with a shotgun.

[3] Stepanov and Sevchuk were each sentenced to 15 years to life imprisonment, enhanced one year for being vicariously armed with a shotgun.

request to clarify the provocation instruction; 3) instructions discouraging read-back requests were improperly coercive; 4) the trial court abused its discretion and denied Isayev due process when it refused to exclude evidence of another shooting; 5) the instruction on the other shooting improperly restricted consideration of the relevant evidence to theories favoring the prosecution; 6) the jury was erroneously instructed as to the burden of proof required for the consideration of prior bad acts; 7) evidence regarding the other shooting was improperly admitted; 8) the imposed parole revocation fire was unauthorized; and 9) the lying in wait special circumstance is unconstitutional.  Isayev also requested that the appellate court review the records of an *in camera* hearing to determine whether more of Yarmaliuk's medical records should have been disclosed.

On July 19, 2011, the California Court of Appeal struck one fine levied against Isayev but otherwise affirmed the conviction in all respects in a reasoned, unpublished opinion.  *Isayev*, 2011 WL 2848584, at *26.  Isayev petitioned for review in the California Supreme Court, raising his claims that: 1) the holdout juror was erroneously discharged; 2) the trial court erred in refusing to clarify the provocation instructions; 3) the jury instructions improperly discouraged read-back requests; 4) the court should have admitted culpability evidence regarding the other shooting; 5) Isayev's due process rights were violated by the admission of evidence of the other shooting; and 6) the lying in wait special circumstance is unconstitutional.  The Supreme Court summarily denied review with respect to all defendants on October 26, 2011.

Isavey then filed in the state supreme court a counseled petition for a writ of habeas corpus.  In that petition, he argued that: 1) his LWOP sentence constituted cruel and unusual punishment, and the trial court's failure to consider Isayev's youth and personal characteristic

violated Isayev's due process rights; 2) trial counsel rendered ineffective assistance at sentencing by failing to present mitigating evidence and failing to ask the trial court to exercise its discretion and impose a sentence of 25 years to life imprisonment; 3) appellate counsel was ineffective for failing to raise those sentencing issues on direct appeal; 4) trial counsel was ineffective for failing to investigate and present a defense based on diminished actuality; 5) the prosecutor's misstatement of the law during closing argument deprived Isayev of due process, and trial counsel was ineffective for failing to object; and 6) the jury instruction lowering the State's burden of proof with respect to the other shooting violated Isayev's rights to due process and a fair trial. Respondent filed an informal response to the petition, and Isayev filed a counseled reply.

The Supreme Court then ordered Respondent to show cause before the Superior Court as to the sole issue of whether Isayev, who was 17 at the time of the crime, was entitled to a resentencing hearing under *Miller v. Alabama*, 567 U.S. 460 (2012).[4] Respondent filed a return to the order to show cause, and Isayev filed a counseled denial. The Superior Court vacated Isayev's sentence and referred his case for resentencing. Isayev was subsequently sentenced to a term of 25 years to life imprisonment with the possibility of parole, enhanced 25 years to life for the personal use and discharge of the shotgun, for an aggregate imprisonment term of 50 years to life. All other claims in his state habeas petition were denied without comment.

Isayev's wife and uncle by marriage timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court as Isayev's "next friends" on October 12, 2012. This Court, through a

---

[4]     In *Miller*, the Supreme Court held that the "Eighth Amendment forbids a sentencing scheme that mandates [LWOP] for juvenile offenders." *Miller*, 567 U.S. at 479.

previously-assigned magistrate judge, denied Isayev's motion to proceed with next friends but appointed counsel to represent Isayev. Docket No. 8. Appointed counsel filed a Second Amended Petition for a Writ of Habeas Corpus ("Petition;" Docket No. 23), the timeliness of which Respondent does not dispute. The Petition is now before the undersigned judge and ripe for adjudication.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Isayev argues that: 1) trial counsel was ineffective for failing to investigate and present a defense based on diminished actuality; 2) the prosecutor's misstatement of the law during closing argument deprived Isayev of due process, and trial counsel was ineffective f or failing to object; 3) the trial court failed to exclude evidence of a dissimilar shooting and denied Isayev due process when it excluded evidence of third party culpability; 4) the trial court erroneously lowered the State's burden of proof with respect to the other shooting; 5) the lying in wait special circumstance is unconstitutional; and 6) the trial court deprived Isayev of his right to an impartial jury when it discharged the lone holdout juror.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication

on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Ground 1.  *Freestanding Ineffective Assistance of Counsel Claim*

Isayev first argues that counsel was ineffective for failing to investigate and present a defense of diminished actuality. "To support a defense of 'diminished actuality,' a defendant presents evidence of voluntary intoxication or mental condition to show he 'actually' lacked the mental states required for the crime." *People v. Clark*, 261 P.3d 243, 260 n.3 (Cal. 2011). According to Isayev, although defense counsel argued that Isayev was under the influence of alcohol and was unable to form the specific intent to murder, counsel should have also presented evidence about Isayev's difficult childhood and adults failing to protect him, which would have explained why he reacted the way he did when Stepanov told him that the victim raped her. Isayev raised this claim in a state habeas petition, which the California Supreme Court denied without comment.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

8

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Isayev must show that counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Isayev could have theoretically benefitted from a defense of "diminished actuality" if he provided evidence that, at the time of the killing and due to a mental defect caused by his difficult childhood, he did not harbor the intent necessary to murder the victim. *See, e.g.*, *People v. Mejia-Lenares*, 38 Cal. Rptr. 3d 404, 412 (Cal. Ct. App. 2006). "The concept of diminished actuality is circumscribed, however." *Id.* In 1981, the California legislature abolished the defense of "diminished capacity," pursuant to which evidence which tended to show a defendant lacked the mental capacity to form the requisite mental state was admissible in the guilt phase of a criminal trial. *Id.* at 416. Thus, since 1981, criminal defendants in California have been prohibited from offering evidence of "an accused person's intoxication, trauma, mental illness, disease, or defect to show or negate capacity to form the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged." *Id.* at 409. Accordingly, Isayev could not have made the argument that due to a mental defect caused by his difficult childhood, he lacked the general capacity to form the requisite intent to murder. Rather, under the defense of "diminished actuality," Isayev would have been limited to producing evidence which demonstrated that he actually did not form the requisite intent at the time the victim was killed. *See e.g.*, *People v. Wright*, 111 P.3d 973, 982 (Cal. 2005) (Brown, J., concurring) (defining defense "diminished capacity" as "that nonsensical phrase being judicial shorthand for the actual lack of a requisite mental state, due to an abnormal mental condition"). His diminished actuality defense would have been further constrained by California Penal Code § 29, which provides:

> In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged.

The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact.

CAL. PENAL CODE § 29.

In this case, Isayev's chances of convincing the jury—even with the testimony of a mental health expert retained by the defense—that he lacked the requisite intent to murder the victim at the time of the offense were extremely slim. As noted above, his expert would not have been able to offer an opinion on the issue of whether Isayev harbored the requisite levels of intent at the time of the offense. *See id*. Rather, the expert would have only been able to discuss Isayev's childhood background and affected mental health factors and to testify generally about the effect of mental illness on a person's *mens rea*. Any expert testimony offered by Isayev would have had to overcome Yarmaliuk's testimony, which does not provide any support for the notion that, at the time of the offense, Isayev was suffering from a mental defect such that he could not harbor the intent necessary to commit first-degree murder. To the contrary, Yarmaliuk's testimony strongly suggests that Isayev acted with a degree of calculation and planning that belies the notion that he was so delusional that he could not intend to conspire or to kill.[5]

---

[5]     As the Court of Appeal summarized:

Yarmaliuk testified that he drove Isayev and Sevchuk to the victim's house and parked across the street. Sevchuk had a loaded shotgun and Yarmaliuk was told that the victim "raped a girl" and "need[ed] to answer for that." The group planned to shoot at the victim when he came out of the house but that plan was thwarted when the victim appeared accompanied by his fiancée. Because the would-be assailants did not want to have "extra witnesses" around, they drove away. Isayev called Stepanov to tell her she would have to lure the victim to a park and they would "come over and do the deed." Isayev told Yarmaliuk that Stepanov wanted the victim to be killed because he had raped her and that she had "ordered" him to commit the murder.

In light of the constraints that would have been placed on an expert testimony pursuant to California Penal Code § 29, Yarmaliuk's testimony and the evidence of motive and planning in the record, and the limited scope of the "diminished actuality defense" in California, there is no reasonable probability that Isayev would have received a more favorable verdict had trial counsel more thoroughly investigated, and ultimately presented, a diminished actuality defense. *See Stokeley v. Ryan*, 659 F.3d 802, 814 (9th Cir. 2011) ("In sum, '[t]his is not a case in which the defendant's attorneys failed to act while potentially powerful mitigating evidence stared them in the face. It is instead a case, like *Strickland* itself, in which defense counsel's decision not to seek more mitigating evidence from the defendant's background than was already in hand fell well within the range of professionally reasonable judgments.") (internal citations and quotation marks omitted). Counsel therefore cannot be faulted for failing to pursue such defense. *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel).

---

*Isayev*, 2011 WL 2848584, at *7. As the Court of Appeal reasonably concluded, Yarmaliuk's testimony was sufficiently corroborated by other evidence in the record:

> [P]hotographs of the victim's house and its location matched the description Yarmaliuk had given. The victim;s fiancée testified that when she and the victim came out of the house, she saw a white car parked across the street. The occupants of this car shielded their faces and then drove away. This testimony matched Yarmaliuk's testimony and statements to detectives. Phone records corroborated Yarmaliuk's descriptions of phone calls Isayev made from the car. Yarmaliuk described Sevchuk loading bullet and pellet rounds into a shotgun, and forensic evidence established that the victim's wounds were caused by this type of ammunition.

*Id.* at *8.

The California Supreme Court's rejection of this claim is neither contrary to, or an unreasonable application of, federal law, and Isayev is not entitled to relief on this claim.

Ground 2.    *Prosecutorial Misconduct*

Isayev next contends that the prosecutor committed misconduct by misstating the law on his heat-of-passion defense.  The record reflects that, during summation, the prosecutor argued that Isayev killed the victim intentionally and that heat of passion was inapplicable.  He stated the law as follows:

> A defendant killed someone in heat of passion if he, one, was provoked, two, as a result of the provocation acted rashly and under the influence of intense emotion that obscured his reasoning or judgment and, three, the provocation would have caused an ordinary person of average disposition to act rashly and without due deliberation, that is, from passion, rather than judgment.

The prosecutor also gave a hypothetical to illustrate what heat of passion might look like. The prosecutor then stated, "The defendant must have acted under the direct and immediate influence of provocation, not for some other purpose, and consider whether an ordinary person of average disposition would have been provoked and how such a person would react in the same situation knowing the same facts."

Isayev argues, as he did in a state habeas petition, that the prosecutor improperly argued to the jury that the heat-of-passion defense was inapplicable because "no person would *act* the way Mr. Isayev acted."  Isayev contends that, under California law, the issue before the jury was "whether an ordinary person of average disposition would have been provoked in the specific circumstances of the case.  The question[] is *not* whether the act of killing was reasonable in the specific situation."

Under clearly established federal law, a prosecutor's incorrect and improper comments will be held to violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam) (quoting *Darden v. Wainright*, 477 U.S. 168, 181 (1986)); *see Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000). In determining whether the prosecutor's remarks rendered a trial fundamentally unfair, the remarks must be analyzed in the context of the entire proceeding. *Boyde*, 494 U.S. at 385; *Darden*, 477 U.S. at 179-182. Even when prosecutorial misconduct rises to the level of a due process violation, such misconduct provides grounds for habeas relief only if that misconduct is prejudicial under the harmless error test articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).

In this case, the jury was instructed on the heat-of-passion defense as follows:

A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone in the heat of passion. The defendant killed someone in the heat of passion if: 1. The defendant was provoked; 2. As a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment.

Prior to deliberations, the trial court also instructed the jury to "follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

Isayev does not contend in his Petition that the heat-of-passion instruction was incorrect, and we must presume that the jury followed its instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Thus, even assuming without deciding that defense counsel's argument could be interpreted in the manner Isayev characterizes, Isayev cannot demonstrate that the

prosecutor's remarks were anything more than harmless or rendered his trial unfair.  Isayev is therefore not entitled to relief on this claim.

Ground 3.    *Evidentiary Error*

Isayev next claims that the trial court erred in excluding evidence that someone else committed a drive-by shooting (the "Kutsenko shooting"), evidence of which was admitted at trial.  At the time of the Kutsenko shooting, Isayev was dating Nadia S., Kutsenko's former girlfriend.  When Kutsenko continued to call and text Nadia, Isayev became jealous and threatened to shoot Kutsenko's house.  The next day, someone shot at the house and at a van parked outside.  The prosecution sought to introduce evidence relating to the Kutsenko shooting to prove defendants' intent, motive, and knowledge.  The trial court granted the request over objection.  On direct appeal, Isayev and Sevchuk challenged the court's admission, and the Court of Appeal determined that the trial court acted within its discretion in admitting the evidence.  *Isayev*, 2011 WL 2848584, at *5.

Isayev and Sevchuk additionally argued on direct appeal that the trial court erred in excluding evidence that someone other than Isayev committed the Kutsenko shooting.  According to Isayev, the Kutsenko shooting was actually committed by the brothers of Nadia S., and that Kutsenko stabbed one of these men in retaliation for the shooting.  The trial transcript reflects that, when defense counsel began to cross-examine Nadia on this theory, the prosecutor objected, arguing that the line of questioning was confusing and its potential for prejudice outweighed any probative value.  The trial court agreed and ruled this area inadmissible under California Evidence Code § 352.[6]  Defense counsel asked that Nadia be subject to recall and added, "[p]erhaps I can put my words together better in writing than I am able to verbally."  The

---

[6]    California Evidence Code § 352 requires the trial judge to balance the probative value of proffered evidence with its potential prejudicial effect

court agreed to reconsider the matter "upon further argument." Isayev subsequently filed a motion to question both Kutsenko and Nadia about the involvement of Nadia's brothers in the shooting of Kutsenko's house, and the People filed an opposition. The court indicated that it was still skeptical about the relevance of the proffered evidence, but said it would reevaluate the matter if Isayev explained specifically what he wanted to ask Nadia on recall. Isayev rested without recalling Nadia or making any further motions on this subject. He later argued on direct appeal that the trial court erred in failing to allow him to cross-examine Kutsenko and Nadia on the topic. The Court of Appeal rejected the argument, concluding that:

> [T]he evidence defendants sought to introduce did not relate to the charged offense, but to the Kutsenko shooting. The relevance of this evidence to the charged murder is attenuated and has little, if any, bearing on the question of whether defendant Isayev killed this victim, in this case.
> Moreover, any probative value was outweighed by other considerations under Evidence Code section 352. Had this evidence been allowed, the trial would have become one focused on determining who was responsible for the Kutsenko shooting, not the Paskar murder. The trial court acted well within its discretion in concluding that evidence relating to the involvement of Nadia's brothers in the Kutsenko shooting would likely confuse the jurors and consume excessive time in an already lengthy trial. Defendants' claims to the contrary are unpersuasive.

*Isayev*, 2011 WL 2848584, at *6.

Evidence of the Kutsenko shooting was admitted in this case under California Evidence Code 1101(b). Federal Rule of Evidence 404(b), the federal counterpart to the California rule, similarly allows admission of a defendant's other bad acts, but only for certain limited purposes, including proving the defendant's intent, motive, identity, and plan. Under the seminal case *Huddleston v. United States*, 485 U.S. 681, 682 (1988), a district court is not required to make a preliminary finding that the government has proved the other act before it submits the evidence to the jury. Federal Rule of Evidence 104(b) requires that, "[w]hen the relevancy of evidence

depends upon the fulfillment of a condition of fact," the court should admit evidence subject to "the introduction of evidence sufficient to support a finding of the fulfillment of the condition." FED. R. EVID. 104(b). Accordingly, *Huddleston* mandates that FRE 104(b) allows the jury to make the final determination regarding whether the defendant committed the prior bad act, after the court has made the initial determination that a jury reasonably could find the conditional fact. *Huddleston*, 485 U.S. at 690.[7] In this case, Isayev argued on direct appeal that the trial court erred in admitting evidence of the Kutsenko shooting, but he does not re-assert that claim in this Petition. Rather, he solely challenges the trial court's decision, after it had admitted the other bad acts evidence, to exclude third-party culpability evidence as to the other bad act evidence, which did not relate to the charged crime.

It is well-settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense. *See Chambers v. Mississippi*, 410 U.S. 284 (1967); *Washington v. Texas*, 388 U.S. 14, 19 (1967). A corollary of the right to present a defense is the right of the accused to rebut adverse Rule 404(b) against him, and the state court recognized that right.

Although less commonly used in this manner, Rule 404(b) additionally allows a defendant to introduce the other bad acts of a third party, which some courts have referred to as reverse 404(b) evidence. *See generally* Jessica Broderick, *Reverse 404(b) Evidence: Exploring Standards when Defendants Want to Introduce Other Bad Acts of Third Parties*, 79 U. COLO. L. REV. 587, 588 (Spring 2008). Reverse 404(b) evidence is traditionally used to prove that a third

---

[7]     If FRE 104(b) did not apply to other acts evidence, the court could admit the evidence only after it had determined by a preponderance of the evidence that the defendant had committed the other act. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

party committed the charged crime or otherwise coerced the defendant into committing the charged crime. *See id.* at 589. This Court has found no authority applying Rule 404(b) in the situation at hand, where a defendant has sought to introduce a third party's bad acts to challenge the defendant's culpability not as to the charged crime but as to admitted evidence of the defendant's other bad act. The Court will nonetheless assume, without deciding, that the same evidentiary rules apply in that setting.

Although a defendant faced with adverse Rule 404(b) testimony has a right to rebut it, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988). States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

The *Huddleston* Court discussed a number of safeguards for ensuring that the evidence of the other bad act admitted under Rule 404(b) does not unfairly prejudice the individual against whom it is brought. Of relevance here, is the requirement that the trial court balance the probative value of the evidence against the danger of unfair prejudice. *Huddleston*, 485 U.S. at 691-92. Federal Rule of Evidence 403, the federal counterpart to California Evidence Code

section 352,[8] permits the exclusion of evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."  *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).  California employs a similar rule.  *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

Here, the appellate court found that the trial judge properly conducted the weighing process recognized by Evidence Code section 352 in excluding the proposed third party culpability evidence.  This Court must defer to the state appellate court's determination of state law.  *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Bains v. Cambra*, 204 F.3d 964, 972 (9th

---

[8]      The Ninth Circuit has recognized a distinction between the California and federal threshold requirements for the admissibility of third-party culpability evidence.  California courts have interpreted Section 352 as prohibiting the admission of evidence that a third party may have committed the charged crime "if it simply affords a possible ground of suspicion against [another] person; rather it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense."  *People v. Greene*, 609 P.2d 468, 480 (Cal. 1980).  The Ninth Circuit has expressly held that the Federal Rules of Evidence, unlike the California corollary rules, do not require a showing of "substantial evidence" connecting the third party to the crime.  *United States v. Espinoza*, 880 F.3d 506, 514 (9th Cir. 2018).  Rather, under Federal Rule of Evidence 404(b), "[f]undamental standards of relevancy, subject to the discretion of the court to exclude cumulative evidence and to insure orderly presentation of a case, require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged."  *Id.* at 511 (quoting *United States v. Armstrong*, 621 F.2d 951, 953 (9th Cir. 1980)).

Cir. 2000).  Thus, state law was not violated by the admission of the evidence.  Indeed, to the

extent that Isayev asserts an error under California evidentiary law, such claim is not cognizable

on federal habeas review.  The Supreme Court has made clear that federal habeas power does not

allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the

state evidence code in ruling on the admissibility of evidence.  *Estelle v. McGuire*, 502 U.S. 62,

72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S.

145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Indeed, the Supreme Court has not yet "squarely addressed" whether a state court's

discretionary exclusion of evidence can ever violate a defendant's right to present a defense.  *See*

*Moses v. Payne*, 555 F.3d 742, 758-59 (9th Cir. 2008) (considering challenge to state evidentiary

rule allowing discretionary exclusion of expert testimony favorable to defendant); *see also*

*Brown v. Horell*, 644 F.3d 969, 983 (9th Cir. 2011) (noting that no Supreme Court case has

squarely addressed this issue since *Moses*).  Thus, the state court's decision could not have

contravened clearly established federal law under AEDPA.  *Id.*; *see Wright v. Van Patten*, 552

U.S. 120, 125-26 (2008).

Contrary to Isayev's assertions, the exclusion of the evidence here was not contrary to

*Chambers* or *Washington v. Texas* because in those cases, unlike here, the excluded evidence

was "critical" because the proffer was of a percipient witness whose testimony, if believed,

would have exculpated the defendant.  *See United States v. Bowman*, 215 F.3d 951, 962-63 (9th

Cir. 2000) (explaining that evidence of third party culpability may properly be excluded "if it is

insufficiently probative in light of its prejudicial effect under Rule 403).  Federal law requires

that a petitioner demonstrate that the trial court excluded "trustworthy and necessary exculpatory

testimony." *Cudjo v. Ayers*, 698 F.3d 752, 754 (9th Cir. 2012) (citing *Chambers*, 410 U.S. at 300-01). A petitioner must show that the third-party evidence was "inconsistent with" and "raise[d] a reasonable doubt of" his guilt. *Holmes*, 547 U.S. at 327. Isayev fails to meet this standard as the excluded evidence "d[id] not tend to prove or disprove a material fact in issue at [his] trial." *Id.* 11-12. Even if the jury had believed that someone other Isayev had committed the Kutsenko shooting, such fact would not have cleared him of the charged crime.

Nor can Isayev show that the exclusion violated his rights to compulsory process and a fair trial. Isayev must "'make some plausible showing' of how the [excluded evidence] 'would have been both material and favorable to [his] defense' to establish a violation of [his] compulsory process and fair trial rights." *Soo Park v. Thompson*, 851 F.3d 910, 923 (9th Cir. 2017) (quoting *Valenzuela-Bernal*,, 458 U.S. 858, 867 (1982). The Ninth Circuit has explained that "[m]ateriality does not require incontrovertible evidence of exculpation; to the contrary, evidence that tends to 'cast doubt' on the government's case qualities as material." *Id.* at 927 (quoting *United States v. Leal-Del Carmen*, 697 F.3d 964, 972 (9th Cir. 2012)). In light of the overwhelming evidence of Isayev's guilt and the fact that the evidence at issue went only to the other act evidence and not the charged crime, Isayev likewise fails to show establish materiality.

Furthermore, the trial court acted well within its discretion and within the bounds of the protections of the Federal Constitution in determining that the limited probative value of the evidence was outweighed by the undue consumption of time that the presentation of such evidence would require as well as the danger of confusion to the jury. *See United States v. Scheffer*, 523 U.S. 303, 314 (1998) (noting that "collateral litigation prolongs criminal trials and threatens to distract the jury from its central function of determining guilt or innocence").

Finally, even if the limitations on cross-examination and testimony were unreasonable, any error would be harmless. For the purposes of federal habeas corpus review, the standard applicable to alleged violations of the Confrontation and Due Process Clauses is whether the exclusion of evidence had an actual and prejudicial effect upon the jury. *See Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht*, 507 U.S. at 637). Likewise, a petitioner must show that erroneously-excluded evidence likely had a "substantial and injurious effect" on the verdict. *DePetris v. Kuykendall*, 239 F.3d 1057, 1063 (9th Cir. 2001). As previously discussed, establishing that a third party was responsible for the Kutsenko shooting would not have been exculpatory with respect to the Paskar shooting, and Isayev would still have been left in the position of convincing the jury to believe his story over that of the other witnesses. Moreover, for the same reasons Isayev fails to show that the excluded evidence was more probative than prejudicial, he fails to show that its exclusion actually prejudiced him. Specifically, Isayev sought to introduce testimony from Nadia and Kutsenko that Isayev did not admit to the Kutsenko shooting or threaten to shoot at Kutsenko's home, in part to rebut Nadia's prior statement to law enforcement. However, at trial Nadia testified that Isayev "never told" her that he was going to shoot up Kutsenko's house and that she did not remember telling police that Isayev told her that he shot at Kutsenko's house. (Reporter's Transcript at 1007-08). Nadia's testimony as given thus already undermined reliance on the prior report, and Isayev fails to show that the result would have been different if the defense had been able to further question Nadia about her brothers' alleged involvement in the shooting. For all of the foregoing reasons, Isayev is not entitled to relief on this claim.

Ground 4.    *Instructional Error*

Isayev additionally avers that the trial court should have instructed the jury that they should find the uncharged misconduct true beyond a reasonable doubt in order to consider the evidence of the Kutsenko shooting. The record reflects that the trial court instructed the jury pursuant to CALCRIM No. 375 that it could consider the Kutsenko shooting evidence "only if the People have proved by a preponderance of the evidence that [Isayev] in fact committed those offenses." The court additionally explained the difference between the preponderance of the evidence and beyond a reasonable doubt burdens. On direct appeal, Isayev argued that the instruction unconstitutionally reduced the prosecutor's burden of proof by allowing the jury to convict him of murder based on the other crimes evidence and the preponderance of the evidence standard rather than the reasonable doubt standard. The Court of Appeal rejected the argument as follows:

> [Isayev] acknowledges that a similar argument was rejected by the California Supreme Court in *People v. Reliford* (2003) 29 Cal. 4th 1007, but he raises the issue to seek reconsideration in state court and preserve the issue for federal review. We are bound by California Supreme Court precedent (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455) and have no basis to reconsider this matter.
>
> But, we note that the language of CALCRIM No. 375 refutes [Isayev's] claim. CALCRIM No. 375, as given in this case, authorized the jury to use the preponderance standard to determine whether [Isayev] committed the uncharged offenses. It explicitly linked this lesser standard of proof with the Kutsenko shooting and just as explicitly reminded the jury that this evidence was not "sufficient by itself to prove that the defendant is guilty of the charged or lesser-included offense. The People must still prove each element of the charge beyond a reasonable doubt."
>
> Nothing in CALCRIM No. 375 authorized the jury to use a preponderance of the evidence standard for anything other than the preliminary question of whether [Isayev] committed the uncharged offense. Viewing the instruction as a whole, it is unreasonable to think the jury would have interpreted the instruction to authorize conviction on the charged offense based on a lower standard than proof beyond a reasonable doubt. (*See People v. Reyes* (2008) 160 Cal.App.4th 246, 252 [similar analysis applied to CALCRIM No. 852, relating to evidence of prior uncharged acts of domestic violence].)

24

*Isayev*, 2011 WL 2848584, at *14.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). A federal habeas court "must determine whether there was a reasonable likelihood that the jury understood the instruction to allow a conviction predicated on proof that was insufficient to meet the requirements of due process." *Lisenbee v. Henry*, 166 F.3d 997, 999 (9th Cir. 1999) (*citing Ramirez v. Hatcher*, 136 F.3d 1209, 1213 (9th Cir. 1998)).

The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way

that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id.*

In this case, the California appellate court's rejection of this instructional error claim was not objectively unreasonable. It is well-settled that a criminal jury may be instructed to apply a preponderance-of-the-evidence standard to a preliminary fact, such as a prior bad act, without lowering the prosecutor's ultimate burden of proof. *Cf. Estelle*, 502 U.S. at 73-74 ("To the extent that the jury may have believed McGuire committed the prior acts and used that as a factor in its deliberation, we observe that there was sufficient evidence to sustain such a jury finding by a preponderance of the evidence.") (*citing Huddleston v. United States*, 485 U.S. 681, 690 (1988)). The state court relied on *People v. Reliford*, 62 P.3d 601 (Cal. 2003), which upheld a similar jury instruction specific to consideration of prior sex offenses in sex offense cases.[9] The Ninth Circuit has held that *Reliford* is consistent with clearly established federal law.[7]

---

[9] Indeed, unlike the instruction challenged here, the instruction at issue in *Reliford*, CALJIC No. 2.50.01, expressly permitted that, if a juror found by a preponderance of the evidence that the defendant had committed a prior crime, the juror could properly infer propensity to commit the charged offense. Accordingly, that instruction is more problematic than CALCRIM 375. Isayev's jury was instructed that it could consider the prior conduct—if proved by a preponderance of the evidence—for the limited purpose of determining intent, motive, or plan. Whether the evidence was properly admitted on any of those theories is a question of state law that this court may not disturb. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (federal habeas corpus relief does not lie for errors of state law).

[7] Isayev argues that *Reliford* is nonetheless distinguishable here because it involved a prior conviction whereas the Kutsenko was prior uncharged misconduct. However, no Supreme Court authority clearly establishes that a higher burden of proof attaches to a finding of prior uncharged misconduct as opposed to a prior conviction. Lacking any clearly established Supreme Court authority on that point, it cannot be concluded that the appellate court's ruling contravened or unreasonably applied federal law. *Carey*, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately addressed a claim, a federal court cannot find a state court

*Schultz v. Tilton*, 659 F.3d 941, 945 (9th Cir. 2011). Moreover, there is no reasonable likelihood

that the jury in Isayev's case applied the challenged instruction in a way that violates the

Constitution. *See Estelle*, 502 U.S. at 72–73. In this case, the jury was instructed pursuant to

CALCRIM No. 375 as follows:

> "The People presented evidence that the defendant committed or participated in an offense not charged in this case, namely participated in a shooting at Roman Kutsenko's house and car on September 23, 2005.[¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed those offenses. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely.
>
> "If you decide that the defendant participated in that offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not: [¶] The defendant was motivated to retaliate violently with a gun against a person who he believed had disrespected his girlfriend; [¶] The defendant acted with intent to kill [the victim]. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offense.
>
> "If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged or lesser-included offense. The People must still prove each element of the charge beyond a reasonable doubt."

*Isayev*, 2011 WL 2848584, at *12-13.

Thus, the instructions as a whole clearly explained the distinct burdens of proof that

applied to the prior acts and to the murder charges, and the permissible and impermissible uses

of the prior acts evidence. *See Schultz*, 659 F.3d at 945 (finding no ambiguity about the

prosecutor's burden of proof from a preponderance-of-the-evidence instruction for prior bad acts

where the instructions on the whole were "unambiguous and made clear that Schultz could be

_____

ruling unreasonable).

convicted only if the evidence as a whole proved him guilty beyond a reasonable doubt of the charged crime") (*citing Mendez v. Knowles*, 556 F.3d 757, 770 (9th Cir. 2009) (same where "several instructions regarding the beyond a reasonable doubt standard were read to the jury after the jury was given the preponderance of the evidence instruction")). Accordingly, the California Court of Appeal reasonably concluded that the given instructions did not violate the United States Constitution, and Isayev is not entitled to relief on this claim.

Ground 5.        *Unconstitutional Special Circumstance*

Isayev further challenges the California's lying in wait special circumstance on the basis that it is unconstitutionally vague and does not provide a meaningful basis for distinguishing between the lying in wait special circumstance, which allows a jury to find a defendant eligible for death or LWOP, and lying in wait murder, under which a defendant may be subject to a minimum sentence of 25 years to life imprisonment. Absent such distinction, Isayev avers that the special circumstance violates due process and the constitutional protection against cruel and unusual punishment.

Under death penalty jurisprudence, the Supreme Court has held that, "a capital sentencing scheme must, in short, provide a 'meaningful basis for distinguishing the few cases in which [the penalty] is imposed from the many cases in which it is not.'" *Godfrey v. Georgia*, 446 U.S. 420, 427-28 (1980) (citations omitted). Thus, the Supreme Court concluded in *Godfrey* that "if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Id.* at 428.

As an initial matter, to the extent Isayev contends that the lying in wait special circumstance is vague because it fails to properly distinguish or explain the class of persons eligible for the death penalty in violation of the Eighth Amendment (Petition, Docket No. 23 at 58), Isayev lacks standing to assert such a claim because he was not sentenced to death, and indeed, his LWOP sentence was vacated. *See Whitmore v. Arkansas*, 495 U.S. 149, 154-55, 161 (1990); *Bradway v. Cate*, 588 F.3d 990, 991 (9th Cir. 2009) (petitioner recognized that he lacked standing for an Eighth Amendment death penalty challenge because he was not sentenced to death); *Houston v. Roe*, 177 F.3d 901, 907 (9th Cir. 1999) (petitioner sentenced to life without the possibility of parole lacked standing to raise an Eighth Amendment claim that the line between non-capital murder by means of lying-in-wait and capital murder with the special circumstance of lying-in-wait was vague and arbitrary). Moreover, "the federal courts have adamantly refused to extend the principles of death-penalty jurisprudence beyond the specific confines of the death penalty." *Gonzalez v. Prunty*, 959 F. Supp. 1264, 1272–73 (C.D. Cal. 1997); *see also Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (expressly noting the "qualitative difference between death and all other penalties"); *Coleman v. McCormick*, 874 F.2d 1280, 1288 (9th Cir. 1989) ( "The finality and severity of a death sentence makes it qualitatively different from all other forms of punishment.").

Further, Isayev cannot prevail on any due process claim either because the Ninth Circuit has specifically held that California's "lying-in-wait circumstance is not overly broad such that it 'appl[ies] to every defendant convicted of murder.'" *See Morales v. Woodford*, 388 F.3d 1159, 1175 (9th Cir. 2004) (as amended) (citation omitted); *see also Bradway v. Cate*, 588 F.3d 990, 992-93 (9th Cir. 2009) (rejecting a vagueness challenge to the lying in wait special

circumstance).  In *Bradway*, the California Court of Appeal overturned the trial court's dismissal of the lying-in-wait special circumstance finding, holding that the lying-in-wait special circumstance required a specific intent to kill, whereas the first degree murder statute did not. 588 F.3d at 991.  The Ninth Circuit, considering Bradway's claim pursuant to the due process clause because he did not have standing to raise an Eighth Amendment claim, subsequently rejected Bradway's habeas challenge, finding that "no decision of the Supreme Court hold[s] that a distinction in intent (or, indeed, any other distinction) fails to adequately narrow the class of first degree murderers to those properly eligible for a sentence of life without parole."  *Id.* at 992. Absent such authority, Isayev cannot obtain federal habeas relief on this claim.  *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted).  Based on the foregoing, the Court has no basis for concluding that the state courts' rejection of Isayev's claim was either contrary to, or involved an unreasonable application of, federal law as determined by the United States Supreme Court.  Isayev is not entitled to habeas relief on this ground.

Ground 6.     *Discharge of Holdout Juror*

Finally, Isayev claims that the trial court erred in discharging a juror during deliberations. In considering this claim on direct appeal, the Court of Appeal laid out the following facts underlying this claim:

> Complaints about Juror No. 12 arose during deliberations and the court held a hearing to question each juror.
> Juror No. 2 asserted that Juror No. 12 said that he slept through "a lot" of the testimony.  Juror No. 3 reported Juror No. 12 said that he could not remember some of the testimony because he had been "nodding off a lot."  Juror No. 4 said he personally saw Juror No. 12 sleeping on more than one occasion and that Juror No. 12 admitted to

30

"nodding off during parts of the trial." Juror No. 5 also said that Juror No. 12 admitted to sleeping through a lot of testimony. Although Juror No. 5 did not personally observe Juror No. 12 asleep, he opined that Juror No. 12 "really had no idea what went on through the whole case because he didn't pay attention." Juror No. 6 reported that Juror No. 12 stated that he slept through the testimony of several witnesses. Juror No. 7 saw Juror No. 12 with his eyes closed during trial, and said that Juror No. 12 admitted to "nodding off" during the testimony of more than one witness. Juror No. 8 also saw Juror No. 12 with his eyes closed and also reported that Juror No. 12 said he had slept during trial. Juror No. 9 saw Juror No. 12 fall asleep during testimony and stated that Juror No. 12 admitted sleeping during trial. In this juror's opinion, Juror No. 12 missed the testimony of several witnesses. Juror No. 10 reported that Juror No. 12 admitted that he "nodded of[f] periodically." Juror No. 11 also said that Juror No. 12 stated that he "nodded off" during the trial during the testimony of more than one witness.

When questioned by the court, Juror No. 12 denied sleeping during trial but said he told other jurors that he had done so in order to make another juror feel better about having made a "mistake in what he was saying."

The court clerk reminded the court that she had notified the bailiff during trial that Juror No. 12 was sleeping and the bailiff had told the clerk to watch the juror.

The court found the allegations that Juror No. 12 slept during trial (and failed to deliberate) "most problematic," and found that "[t]he discrepancy between what the 10 complaining jurors stated and what Juror [No. 12] stated presents a question of fact, which I am inclined to resolve in favor of the 10 complaining jurors. [¶] I would find that he did sleep during the trial, and he did admit during deliberations to have slept or nodding off during the trial; and I don't believe the explanation he provided."

The court emphasized that it was "relying substantially" on the statements of the other jurors rather than any observations by court personnel and stated, "I feel that Juror [No. 12] should be removed because he slept during portions of the trial, or was nodding off to the point of inattentiveness and this made him unable to fully deliberate as a juror." After finding that Juror No. 12 also did not deliberate with an open mind, the court concluded, "I find that the sleeping issue alone constitutes good cause for his removal. I find that his refusal to deliberate alone constitutes good cause for removal and, of course, in combination they warrant his removal."

*Isayev*, 2011 WL 2848584, at *19-20.

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; *see Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Green v. White*, 232 F.3d 671, 676 (9th Cir. 2000). Due process requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *see also United States v. Plache*, 913 F.2d 1375, 1377-78 (9th Cir.

1990). An impartial jury consists of jurors who will conscientiously apply the law and find the facts. *Lockhart v. McCree*, 476 U.S. 162, 178 (1986).

In accordance with these protections, the Sixth Amendment does not prohibit the mid-deliberation dismissal of biased jurors or jurors who are unable to serve or engage in misconduct. *See, e.g.*, *Williams v. Johnson*, 840 F.3d 1006, 1010 (9th Cir. 2016); *Perez v. Marshall*, 119 F.3d 1422, 1427 (9th Cir. 1997) (collecting cases from other circuit courts); *Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir. 1985). However, a court may not discharge a juror on account of his views of the merits of the case. *See United States v. Symington*,[8] 195 F.3d 1080, 1085 (9th Cir. 1999) (quoting *United States v. Thomas*, 116 F.3d 606, 621 (2d Cir. 1997) ("To remove a juror because he is unpersuaded by the Government's case is to deny the defendant his right to a unanimous verdict.")). This is because an essential feature of the jury trial right is that only the group of jurors determine guilt or innocence. *Williams v. Florida*, 399 U.S. 78, 100 (1970). Selective dismissal of jurors based on their views of the merits of the case would obstruct the jury's independence, eliminate the necessary secrecy of deliberations, and vitiate the

---

[8]     In *Symington*, the Ninth Circuit held that, "if the record evidence discloses any *reasonable* possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the court must not dismiss the juror." *Symington*, 195 F.3d at 1087 (emphasis in original). In this case, Isayev theorizes that Juror No. 12 *may* have been a holdout juror, but there is no direct evidence in the record of that fact. Moreover, as the U.S. Supreme Court has recognized, *Symington* "do[es] not bind" the California courts "when [they] decide[] a federal constitutional question." *Johnson v. Williams*, 133 S. Ct. 1088, 1098 (2013); *see also Williams*, 840 F.3d at 1010 (quoting *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004) (holding that a habeas petitioner's reliance on *Symington* was "misplaced" because "*Symington* is not a Supreme Court case" and because *Symington*'s analysis was based on the Federal Rules of Criminal Procedure rather than the Sixth Amendment)). The *Symington* rule therefore does not apply here in any event.

essential role of the jury to act as a safeguard against the power of the state and the court.

*Symington*, 195 F.3d at 1085-86.

California Penal Code § 1089 provides for the substitution of jurors as follows:

> If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors.

The Ninth Circuit has held that § 1089 is facially valid and retains the "essential feature" of the jury required by the Sixth and Fourteenth Amendments. *Miller*, 757 F.2d at 995. Thus, in considering a petition for habeas relief concerning the removal of a "hold-out" juror, this Court must assess the state court's application of § 1089 by determining: 1) whether good cause existed for the trial court to excuse the juror; and 2) whether Sixth Amendment rights were violated by excusing a juror when it was known that the juror was the lone juror holding out for an acquittal. *Perez*, 119 F.3d at 1426; *see Frank v. Lizarraga*, 721 F. App'x 719, 719 (9th Cir. 2018) (explaining that, because there is not clearly established law in the area of mid-deliberations discharge of a holdout juror, courts analyze challenges under the framework set forth in *Perez*).

On habeas review, a trial court's findings regarding good cause and juror fitness are entitled to special deference. *Id.*; *cf. Patton v. Yount*, 467 U.S. 1025, 1036–38 & n.12 (1984) (whether juror can render impartial verdict is question of historical fact entitled to special deference). The trial court is in a superior position to observe the juror's physical appearance and demeanor and thereby to determine whether the juror has an opinion or disability that disqualifies the juror or impacts his or her ability to continue deliberating. *Perez*, 119 F.3d at

1427. Whether a trial court violates a defendant's Sixth Amendment right to a jury trial by excusing a juror for good cause and replacing that juror with an alternate is a question of law. *Id*. at 1426.

Applying these legal principles to Isayev's claim, the state court's rejection of the claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. As aforementioned, the record does not clearly indicate that Juror No. 12 was a lone holdout juror; indeed, even if that were established, that fact is not dispositive. *See id.* at 1427 (dismissal of holdout juror permissible because juror's emotional instability that made her unable continue deliberating provided good cause for her dismissal). As the Ninth Circuit explained in *Perez*, "[t]he fact that the trial judge knew that [the juror] was the sole juror holding out for an acquittal when he dismissed her does not invalidate his decision to excuse her from jury service." *Id.* at 1426. The *Perez* Court reasoned that the trial judge was "forced to act, not because of [the juror's] status as a holdout juror, but because of [the juror's] emotional inability to continue performing the essential function of a juror-deliberation." *Id*.

Here, the state court's conclusion that the above-described evidence "provides ample support for the trial court's finding that Juror No. 12 slept during trial" is both reasonable and fully supported by the record. Its determination that Juror No. 12 was properly discharged was not contrary to or an unreasonable application of clearly established federal law nor was it based on an unreasonable determination of the facts. Isayev therefore fails to demonstrate that his constitutional rights were violated by the discharge, and he is not entitled to habeas relief.

## V. CONCLUSION AND ORDER

Isayev is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 19, 2018.

      /s/James K. Singleton, Jr.
      JAMES K. SINGLETON, JR.
      Senior United States District Judge